FILED'09 JAN 26 16:16 USDC-LAE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NORMAN J. MANTON, JR. and<br>SHERRIE BURAS MANTON<br><br>VERSUS<br><br>RODNEY "JACK" STRAIN, JR.,<br>AL STRAIN, MARLIN PEACHEY,<br>GREGORY LONGINO, MIKE CORE,<br>FRED OSWALD, BRIAN O'CULL,<br>GUARD(S) JAMES DOE, THE PARISH<br>OF ST. TAMMANY, LOUISIANA<br>SHERIFF'S ASSOCIATION, ABC<br>INSURANCE COMPANY, J.P. MORGAN<br>CHASE BANK and XYZ INSURANCE<br>COMPANY | CIVIL ACTION No.:<br><br>SECTION: **09-0339**<br><br>DIVISION: **SECT. R MAG 3**<br><br>JURY TRIAL REQUESTED |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## ORIGINAL COMPLAINT

1.

## PRELIMINARY STATEMENT

This Civil Complaint is brought pursuant to Title 42 U.S.C. §§ 1983, 1985, 1986 and

1988, as an action at law to redress the intentional, malicious, and discriminatory deprivation,

under color of law, statute, ordinance, regulation, custom or usage of the rights, privileges,

or immunities secured to Petitioners by the Constitution of the United States, including, but

not necessarily limited to the Fourth Amendment, the Fifth Amendment, the Eighth

Amendment, the Fourteenth Amendment, and/or by Acts of Congress and the U.S.

Fee 350
Process
Dktd
CtRmDep
Doc. No.

Constitution, and further asserts claims pursuant to the Constitution of the State of Louisiana and other pertinent statutes, laws and ordinances of that State.

2.

## JURISDICTION

Jurisdiction is vested in this Honorable Court pursuant to 28 U.S.C. § 1331 and/or 28 U.S.C. § 1343. Supplemental jurisdiction is asserted for all claims cognizable under the laws of the State of Louisiana.

3.

## PARTIES

The Petitioners in this cause of action are as follows:

A.    **NORMAN J. MANTON, JR.,** a person of the full age of majority and a resident and domiciliary of the Parish of St. Tammany, State of Louisiana;

B.    **SHERRIE BURAS MANTON**, a person of the full age of majority and a resident and domiciliary of the Parish of St. Tammany, State of Louisiana.

4.

The Defendants to this cause of action are as follows:

A.    **RODNEY "JACK" STRAIN, JR.,** ("SHERIFF STRAIN") Individually, and in his official capacity, who was, at all times pertinent hereto, the duly elected, qualified and acting Sheriff for THE PARISH OF ST. TAMMANY and keeper of the parish jail pursuant to La. R.S. 15:704 and who was, at all times pertinent hereto, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Eastern District of Louisiana;

B.    **AL STRAIN**, ("WARDEN STRAIN") Individually and in his official capacity, who currently is, the duly appointed, qualified and acting Warden of THE ST. TAMMANY PARISH JAIL, and who was, at all times pertinent

hereto, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Parish of St. Tammany, State of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

C.   **MARLIN PEACHEY** (WARDEN PEACHEY) Individually and in his official capacity, who currently is, the duly appointed and acting Warden of the THE ST. TAMMANY PARISH JAIL, and who was, at all times pertinent hereto, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Parish of St. Tammany, State of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

D.   **GREGORY LONGINO**, ("DEPUTY WARDEN LONGINO")Individually and in his official capacity, the duly appointed, qualified and acting Deputy Warden of the THE ST. TAMMANY PARISH JAIL, who is/was directly involved with the day-to-day living conditions and operations of inmates inside THE ST. TAMMANY PARISH JAIL and who was, at all times pertinent hereto, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Eastern District of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

E.   **MIKE CORE**, ("WARDEN CORE")Individually and in his official capacity, the duly appointed, qualified and acting Deputy Chief of the St. Tammany Parish Sheriff's Office, and was at all times pertinent hereto, the duly appointed, qualified and acting Warden of the THE ST. TAMMANY PARISH JAIL, and at all times pertinent hereto, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Eastern District of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

F.   **FRED OSWALD**, ("MAJOR OSWALD") Individually and in his official capacity, the duly appointed and acting Chief of Investigations of the St. Tammany Parish Sheriff's Office, who, at all times pertinent hereto, had the authority to direct Sheriff's Deputies to arrest individuals and was, a person of the full age of majority and, upon information and belief, a resident and domiciliary of the Eastern District of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY; ;

G.   **BRIAN O'CULL**, ("SERGEANT O'CULL") Individually and in his official

capacity, as a duly appointed, qualified and acting St. Tammany Parish Sheriff's Deputy, and was, at all times pertinent hereto, a person of the full age of majority and, upon information and belief a resident and domiciliary of the Eastern District of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

H.  **GUARD(S) JAMES DOE**, individually and in his/her/their official capacity, who was/were, at all times pertinent hereto, duly appointed, qualified and acting jail guard(s) for the ST. TAMMANY PARISH JAIL and, upon information and belief, was/were a resident(s) and domiciliary(ies) of the Eastern District of Louisiana, who at all times pertinent hereto was an employee of SHERIFF STRAIN and/or The jail and/or THE PARISH OF ST. TAMMANY;

I.  **THE PARISH OF ST. TAMMANY**, is a political subdivision of the State of Louisiana responsible for the physical maintenance of the parish jail pursuant to La. R.S. 15:702 and is capable of being sued under the provisions cited herein;

J.  **LOUISIANA SHERIFF'S ASSOCIATION**, is an organization authorized and licensed under the Laws of the State of Louisiana who provides insurance coverage for the acts and omissions of Defendants, RODNEY "JACK" STRAIN, JR., AL STRAIN, MARLIN PEACHEY, MIKE CORE, FRED OSWALD, GREGORY LONGINO, BRIAN O'CULL, GUARD(S) JAMES DOE and THE ST. TAMMANY PARISH JAIl, when said Defendants are acting in their official capacities as Sheriff of the Parish of St. Tammany, and persons employed by the Sheriff of St. Tammany Parish;

K.  **ABC INSURANCE COMPANY**, an insurance business licensed and duly authorized to do and doing business in the State of Louisiana on or about, prior to and since, January 25, 2007, and that upon information and belief, provided insurance coverage for the acts and omissions of Defendants, RODNEY "JACK" STRAIN, JR., AL STRAIN, MARLIN PEACHEY, MIKE CORE, FRED OSWALD, GREGORY LONGINO, BRIAN O'CULL, GUARD(S) JAMES DOE and THE PARISH OF ST. TAMMANY, made the basis of suit herein;

L.  **J.P. MORGAN CHASE BANK**, a business corporation, at all times pertinent hereto, authorized to do and doing business in the Parish of St. Tammany, State of Louisiana, who, under the thory of respondeat superior, is responsible for the acts and omissions of its employee, Melissa Gerstner;

M.   **XYZ INSURANCE COMPANY**, an insurance business licensed and duly authorized to do and doing business in the State of Louisiana on or about, prior to all of the times pertinent hereto, and that provided insurance coverage for the acts and omissions of Defendant, J.P. MORGAN CHASE BANK and its employees, particularly, Melissa Gerstner;

5.

All of the above named Defendants are bound jointly, severally and <u>in solido</u> to your Petitioners, NORMAN J. MANTON, JR. and SHERRIE BURAS MANTON, in an amount fair and reasonable under the premises, together with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings, including attorney's fees, for the following reasons, to wit:

6.

At all times pertinent hereto, Defendant, LOUISIANA SHERIFF'S ASSOCIATION, had in full force and effect a policy or policies of liability insurance under the terms of which Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, GUARD(S) JAMES DOE and THE PARISH OF ST. TAMMANY were provided with liability coverage for the acts of omissions of said Defendants while acting in their respective official capacities.

7.

Alternatively, Defendant, ABC INSURANCE COMPANY, had in full force and

effect a policy or policies of liability insurance under the terms of which Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, GUARD(S) JAMES DOE and THE PARISH OF ST. TAMMANY were provided with liability coverage for the acts of omissions of said Defendants while acting in their respective official capacities.   The precise terms and numbers embodied in said policy of insurance are incorporated herein by reference and are specifically pled herein as if set forth in extenso.

8.

At all times pertinent hereto, Defendant, XYZ INSURANCE COMPANY, had in full force and effect a policy of liability insurance under the terms of which all Defendant, J.P. MORGAN CHASE BANK, was the named insured and which provided insurance coverage for all acts and omissions of Melissa Gerstner, an employee of Defendant, J.P. MORGAN CHASE BANK, forming the basis os this suit.  The precise terms and numbers embodied in said policy of insurance are incorporated herein by reference and are specifically pled herein as if set forth in extenso.

9.

Alternatively, at all times pertinent hereto, Defendant, THE PARISH OF ST. TAMMANY was self-insured for the acts and omissions of all Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, and GUARD(S) JAMES DOE.

10.

At all times pertinent hereto, Defendants, SHERIFF STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, and PRISON GUARD(S) JAMES DOE, were employed by THE PARISH OF ST. TAMMANY in the capacities previously identified; the acts and omissions plead herein of these individual Defendants were performed in the course and scope of their employment with THE PARISH OF ST. TAMMANY and were further carried out under the color of state law, regulations, customs and policies.

11.

Defendant, THE PARISH OF ST. TAMMANY, may not avail itself of the defense of qualified immunity on the grounds that the acts and omissions which lead to some and/or all of the constitutional deprivations and State law tortious conduct alleged herein were the result of grossly deficient customs and policies created, supported and/or promulgated by said Defendants, as is more fully described herein below.

12.

The individual Defendants, SHERIFF STRAIN, WARDEN CORE, DEPUTY WARDEN LONGINO, MAJOR OSWALD, SERGEANT O'CULL, and PRISON GUARD(S) JAMES DOE, may not avail themselves of the defense of qualified immunity, as these Defendants created, supported, and/or promulgated the customs, and policies which lead to some or all of the constitutional deprivations and State Law tortious conduct alleged herein; Defendants' personal involvement with the handling of inmate affairs and/or their

causal connection to the acts and omissions leading to the deprivation of constitutionally

protected rights further disqualify the doctrine of qualified immunity as a legitimate defense.

13.

## FACTUAL BACKGROUND

Petitioner, NORMAN J. MANTON, JR., was employed as an officer in the Covington

Police Department from approximately 1987 through 1997, during which time he was

assigned to work with the narcotics division of the St. Tammany Parish Sheriff's Department.

Petitioner left the Covington Police Department in 1997 and became a commissioned Deputy

of the St. Tammany Parish Sheriff's Office.  After he retired form the St. Tammany Parish

Sheriff's Office, Petitioner became a contractor and ran a full time, successful contracting

business.

14.

During the time of the acts and omissions described hereinbelow, Petitioner,

NORMAN J. MANTON, JR., was on active probation. Subsequent to the acts and omissions

complained of herein, Petitioner was released from probation and was granted an automatic

first offender pardon pursuant to Louisiana Revised Statute 15:572 and as provided for by

Article 1, § 20 and Article 4 § 5(E)(1) of the Louisiana State Constitution.

## FACTUAL ALLEGATIONS

15.

All improper acts, conduct and behavior of Defendants as set forth in extenso, herein, were performed knowingly, intentionally and maliciously and were performed in bad faith.

16

During November, 2007, an investigation was opened regarding the disappearance of Albert Bloch.  At that time, a former Jefferson Parish Sheriff's Deputy, Mark Hebert, was being investigated for the disappearance of Albert Bloch.

17

Detectives learned that unidentified individual(s), not Albert Bloch, had tried to cash a check(s) drawn on Albert Bloch's checking account at the Covington, Louisiana, branch of J.P. MORGAN CHASE BANK, located at 409 East Boston Street, Covington, Louisiana.

18

At all times pertinent hereto Melissa Gerstner was employed by Defendant,  J.P. MORGAN CHASE BANK, as a bank teller and was acting within the course and scope of that employment.  Melissa Gerstner was the bank teller who refused to complete the attempted transaction(s) when the unidentified individual(s) tried to cash a check(s) drawn on Albert Bloch's checking account.

19

Detectives interviewed Melissa Gerstner on numerous occasions during their

Page 9 of 58

investigation. During her first interview, Melissa Gerstner, was shown a photographic line-up of potential suspects that may have tried to cash a check(s) drawn on Albert Bloch's checking account. Melissa Gerstner could not and did positively identify any of the persons in the photographic line up as the person(s) that attempted to cash a check(s) drawn on Albert Bloch's checking account.

20

Detectives interviewed Melissa Gerstner a second time and presented her with a second photographic line-up of potential suspects. Melissa Gerstner again advised that she could not positively identify any of the persons in the photographic line up as the person(s) that attempted to cash check(s) drawn on Albert Bloch's account. Unhappy with Melissa Gerstner's inability to make a positive identification, Detectives instructed her to "Just pick Number 5," which Melissa Gerstner did, a fact that she admitted to Steve Martin, Esq., a prosecutor for the Louisiana State Attorney General.

21

Petitioner, NORMAN J. MANTON, JR., was the person identified as "Number 5" in the second photographic lineup.

22

Melissa Gerstner knew or should have known that the individual pictured in photograph number 5 was not the individual who tried to illegally cash check(s) on Albert Bloch's account, as she was only able to identify him during the first photographic line-up and was only able to do so after being prompted by the Detectives.

23

After that wrongful identification by Melissa Gerstner, SERGEANT O'CULL signed

an Affidavit requesting that a search warrant be issued allowing the search of Petitioners',

NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON's, home. SERGEANT

O'CULL also signed an Affidavit requesting that a warrant be issued for Petitioner's arrest

for allegedly committing the crime of Attempted Access Device Fraud.  SERGEANT

O'CULL knew that  information he attested to in those Affidavits was false. SERGEANT

O'CULL also had actual and/or constructive knowledge of the wrongful and illegal

misidentification of Petitioner in the second photographic line-up.

24

On or about January 23, 2008, Petitioner's probation officer instructed Petitioner to

report to her office at 10:00 am the next morning, January 24, 2008.  When Petitioner arrived

at the probation office on January 24, 2008, his probation officer instructed him to go with

SERGEANT O'CULL for questioning and to be cooperative with SERGEANT O'CULL's

investigation.

25

Petitioner did not know why he was being questioned and/or involved in SERGEANT

O'CULL's investigation.  When Petitioner asked SERGEANT O'CULL how long he would

be kept SERGEANT  O'CULL  told Petitioner "I'll keep you until I get what I need."

SERGEANT O'CULL then told Petitioner that he [Petitioner] had been identified by a J.P.

MORGAN CHASE BANK employee as being the person who cashed checks belonging to

what he believed to be the victim of an alleged victim of a homicide even though, at that time and, at the time of the preparation of this Original Complaint, no body had been found. Petitioner informed SERGEANT O'CULL that he [Petitioner] was not involved with a homicide in any way, shape or form and that he had only been to a J.P. MORGAN CHASE BANK once in his entire life, well over two years prior to that date.

<div align="center">26</div>

Unknown to Petitioner, the search warrant unlawfully obtained by SERGEANT O'CULL was being executed at Petitioners' home at the same time he was being interrogated.

<div align="center">27</div>

Petitioner was transported to THE ST. TAMMANY PARISH JAIL where he was asked to give a recorded statement, which he did voluntarily.   SERGEANT O'CULL then asked Petitioner when he last had contact with Mark Hebert.  Petitioner responded that Mark Hebert had contacted him requesting the name of an attorney and asked Petitioner for a loan. Petitioner told Mark Hebert the name of an attorney, but Petitioner did not give Mark Hebert a loan.

<div align="center">28</div>

Displeased with Petitioner's answer to his question, SERGEANT O'CULL told Petitioner "the he [Petitioner] drove Mark Hebert's truck to a Chase bank and attempted to cash a check."  In fact, Petitioner has never been inside Mark Hebert's vehicle, let alone attempt to fraudulently cash a check.

29

Petitioner was then asked to submit to a polygraph examination, which he agreed to do. Petitioner was then transported to the Jefferson Parish Sheriff's Office by Detective Dianne Perilloux of the Jefferson Parish Sheriff's Office. After waiting several hours, the polygraph examiner told Petitioner that he could not take a polygraph test because of the prescription heart medication that Petitioner took on a daily basis. The St. Tammany Parish Sheriff's Department, through Detective Dianne Perilloux, had actual knowledge that Petitioner was required to take prescription medications on a daily basis, particularly blood pressure medication, cholesterol medication, anti-anxiety medication, sleeping medication, ADHD medication and a blood thinner.

30

To aid Detectives in their investigation, Petitioner told the Jefferson Parish Sheriff's Detectives that he would go and speak to Detectives Dianne Perilloux and Terry Poche of the Jefferson Parish Sheriff's Department brought Petitioner to Mark Hebert's house and after Petitioner spoke to Mrs. Hebert, she consented to the search of her home. Several items were seized from Mark Hebert's home after that search, including computers, which Petitioner helped load into the police car.

31

After giving a recorded statement, agreeing to take a polygraph examination and speaking to Mark Hebert's wife, all of which Petitioner did voluntarily, Jefferson Parish Sheriff's Deputies were convinced that Petitioner was not involved in the disappearance of

Albert Bloch and they brought him home. When Petitioner got home he learned that a search warrant had been executed on his home while he was being interrogated earlier that day. That warrant permitted the search of Petitioners' house for certain items that belonged to the missing person, Albert Bloch. A large amount of damage was done to Petitioners' home during the search. None of the items listed in the search warrant were found inside Petitioners' home. Several personal items, not listed in the search warrant, belonging to SHERRIE BURAS MANTON were gratuitously seized, including religious artifacts, prayer books and personal diaries, none of which have been returned to Petitioner, SHERRIE BURAS MANTON, despite numerous requests that the items be returned and this is an element of damage sustained by Petitioners.

32

When they arrived at Petitioner's house, Detective Terry Poche of the Jefferson Parish Sheriff's Office went inside Petitioner's home and had a conversation with Petitioner, SHERRIE BURAS MANTON. During that conversation, the Detective explained that Petitioner fully cooperated with their investigation and that they brought Petitioner home because they were convinced that he was not involved with the matter concerning Mark Hebert. Detective Poche also told SHERRIE BURAS MANTON that he would see to it that the personal items seized during the search were returned to Petitioners. These items were never returned to Petitioners.

33

The next morning, on January 25, 2008, at approximately 11:30 am SERGEANT

O'CULL returned to Petitioners' home and arrested Petitioner, NORMAN J. MANTON, JR.,

for allegedly committing the crime of Attempted Access Device Fraud, after he had been

advised by the Jefferson Parish Sheriff's Detectives, who had originally instituted the

spurious investigation, that NORMAN J. MANOTN, JR., was not a person of interest and

that Jefferson Parish was not pursuing Petitioner's arrest.  For reasons only known to

SERGEANT O'CULL and MAJOR OSWALD, they arrested and placed a probation hold

on Petitioner, knowing that Jefferson Parish had dropped the investigation and that the search

of Petitioners' home turned of nothing.

<div align="center">34</div>

While Petitioner was handcuffed in the backseat of SERGEANT O'CULL's police

car, SERGEANT O'CULL, received a telephone call on his cellular phone from Detective

Dianne Perilloux of the Jefferson Parish Sheriff's Department.  SERGEANT O'CULL held

the phone to Petitioner's ear and Detective Perilloux told Petitioner "that she wanted to be

perfectly clear that [Petitioner's] arrest had nothing to do with the Jefferson Parish Sheriff's

Office."

<div align="center">35</div>

MAJOR OSWALD and SERGEANT O'CULL did not have any legitimate legal

basis, whatsoever, to arrest Petitioner and see to it that he was thrown in jail on a probation

hold.  SERGEANT O'CULL and MAJOR OSWALD knew that the bank teller, Melissa

Gerstner, had been prompted to wrongly identify NORMAN J. MANTON, JR. SERGEANT

O'CULL knew that Jefferson Parish was no longer interested in Petitioner, and that the search warrant turned up nothing. Nevertheless, SERGEANT O'CULL arrested Petitioner because he knew that Petitioner would not be able to bond out of jail on a probation hold, in an effort to extort and coerce Petitioner into admitting to doing something that he did not do. SERGEANT O'CULL and MAJOR OSWALD knew that Petitioner was not involved in the alleged attempted access device fraud or the alleged homicide, which to this day has not been substantiated, and Petitioner should never have been involved in any facet of this spurius investigation.

36

When Petitioner arrived at The jail, he was placed into a 3 foot by 3 foot holding cell, referred to as the "Squirrel Cage."  Petitioner was locked inside the Squirrel Cage for four and one-half (4 ½) days.

37

Inside the Squirrel Cage, Petitioner was repeatedly harassed by Defendant, GUARD(S) JAMES DOE, and was deprived of the necessities for the proper maintenance of life.

38

During his 4 ½ day stay inside the Squirrel cage, Petitioner was starved, as he was only given one sandwich.

39

During his 4 ½ day stay inside the Squirrel cage, Petitioner was sleep deprived, as he was required to sit on the floor and pull his knees to his chest in order to try and sleep. Otherwise, Petitioner would have had to try to sleep while he was standing up.

40

During his 4 ½ day stay inside the Squirrel cage, Petitioner was forced to urinate in a plastic cup and was otherwise prohibited from using restroom facilities.  When Petitioner asked GUARD(S) JAMES DOE for permission to use the restroom he was told to "Shut-up and sit down."

41

During his 4 ½ day stay inside the Squirrel cage, Petitioner was not allowed to use the telephone despite repeated requests that he be allowed to do so.

42

During his 4 ½ day stay inside the Squirrel cage, Petitioner informed GUARD(S) JAMES DOE that he had a heart condition and that he needed to take prescription medication to treat same.  GUARD(S) JAMES DOE answered Petitioner's request that he be allowed to take his heart medication by telling Petitioner to "Sit down and shut-up."

43

On or about the night of Tuesday, January 29, 2007, Petitioner was removed from the Squirrel Cage and was placed in isolation cell A50.  Petitioner remained in that isolation cell

for approximately 93 days.

<div align="center">44</div>

Petitioner's isolation cell was approximately six feet wide by approximately eight feet long. The cell door had a six inch by twelve inch opening, used by staff members of the jail to view the person inside of the cell. The lights inside of the cell remained on 24 hours a day, seven days a week.  The cell was extremely cold.  The emergency-call button inside Petitioner's cell was broken, therefore, the only way for Petitioner to request help was to scream at the top of his lungs.

<div align="center">45</div>

During his 93 day stay in isolation, Petitioner was refused his prescription medications, particularly blood pressure medication, cholesterol medication, anti-anxiety medication, sleeping medication, ADHD medication and a blood thinner. Petitioner developed severe disorientation, had hallucinations, and suffered from a sequella of other mental, emotional and psychological problems as a result of his not being allowed to take his prescription medications, a condition that jail staff knew of via Detective Dianne Perilloux, discussed above.

<div align="center">46</div>

Kevin Quadravant was in isolation cell A49, directly across the hallway from Petitioner.  Kevin Quadravant witnessed Petitioner experience severe disorientation and hallucinations.   Kevin Quadravant contacted GUARD(S) JAMES DOE via the properly functioning emergency-call button in his cell and told GUARD(S) JAMES DOE that

something was wrong with Petitioner.  GUARD(S) JAMES DOE intentionally ignored Petitioner and told Kevin Quadravant that Petitioner "was faking it – trying to beat a murder charge."

### 47

Petitioner did not receive any food from the jail during the first four days that he was kept in isolation and he was only able to sustain life because another detainee/inmate across the hall from Petitioner shared his food with Petitioner.  Petitioner was kept inside of the isolation cell for at least fourteen days without being allowed to take a shower or brush his teeth.  When Petitioner was able to fall asleep, he shivered throughout the night because he did not have a pillow or a blanket.

### 48

Petitioner submitted numerous request forms on a daily basis asking that he be given a pillow and a blanket as well as other personal hygiene items; however did not receive one single response to any of his requests.

### 49

DEPUTY WARDEN LONGINO, the person in charge of making sure that the basic needs of pre-trial detainees and inmates are satisfied, refused to answer any of Petitioner's repeated requests for a pillow and a blanket and a toothbrush.

### 50

Petitioner's wife, SHERRIE BURAS MANTON, and his sister telephoned The jail everyday for fourteen days requesting that Petitioner be allowed to take his prescription

medications; however, on the fourteenth day, Petitioner's wife was told to "Quit calling because she is only going to make things worse if she called again."

51

On or about the morning of Friday, February 8, 2008, while Petitioner was asleep, a spider bit Petitioner's left leg. Petitioner yelled for GUARD(S) JAMES DOE and informed him that he had just been bitten by a spider, that he was experiencing severe pain and requested medical attention. GUARD(S) JAMES DOE dismissed Petitioner's request for medical attention and told Petitioner "Doctors don't work on weekends."

52

The following day, the pain from the spider bite had greatly increased and the area surrounding the bite had swollen to roughly four times its original size. Petitioner again asked if he could see a doctor, but his request was refused. Instead, Petitioner was seen by a nurse who, after looking at the wound, agreed that Petitioner needed to be taken to the medical unit. However, Petitioner was given Pepto Bismol and was again told that "Doctors don't work on weekends."

53

On Sunday morning, three days after being bitten, the swelling and redness had spread halfway down Petitioner's leg. The pain was so intense that Petitioner could not sit or lay down without experiencing excruciating pain. Petitioner showed the morning medical pass nurse the wound and the nurse responded by telling Petitioner "Doctors don't work on weekends." Later that afternoon, part of the bite burst open and fluid began leaking out of

the wound, causing the pain to substantially increase. Another inmate could hear Petitioner crying in pain and called for GUARD JAMES DOE. A nurse told Petitioner that the skin around the wound was rotting, but that nothing could be done until the next morning when the doctors arrived.

54

First thing Monday morning, four days after the spider had bitten Petitioner's leg, Petitioner again requested to see a doctor; however, Petitioner was not seen until 1:00 pm that afternoon. The doctor took a blood sample from Petitioner and administered pain medication. Petitioner was told that nothing could be done until the results of the blood test came back. Petitioner asked if he could be taken to a hospital at his own expense, which request was denied.

55

From the time the spider bit Petitioner on Friday, February 8, 2008, through Monday, February 11, 2008, Petitioner reported the incident to at least seven guards and four nurses. Six other inmates inside the isolation chamber witnessed Petitioner's repeated requests for medical attention and The jail's refusal to respond to Petitioner's requests. The names of those inmates are intentionally omitted from this pleading due to fears that recourse will be taken against them by GUARD(S) JAMES DOE and other staff members of the jail.

56

After spending approximately **NINETY-THREE (93)** days in the isolation cell, as a pre-trial detainee who had not committed a crime, Petitioner was taken to DEPUTY

WARDEN LONGINO's office for a meeting. During that meeting, DEPUTY WARDEN

LONGINO acknowledged that Petitioner is a former police officer and that it would have

been unsafe to put Petitioner in an tier/cell where he would be recognized by other pre-trial

detainees and/or inmates. DEPUTY WARDEN LONGINO showed Petitioner a list of names

and asked Petitioner if he recognized any of the names on the list, which Petitioner did not.

<div align="center">57</div>

After that meeting, Petitioner was moved to A500, a ten man tier containing five

individual cells, with two inmates assigned to each individual cell and one common area that

is shared by all ten inmates when they are not locked down.

<div align="center">58</div>

Inside A500, Petitioner was assigned to share a cell with Frank Knight, a pre-trial

detainee accused of committing four counts of first degree murder. Petitioner was being held

for allegedly committing the crime of Attempted Access Device Fraud, which is not a violent

crime.

<div align="center">59</div>

The day after Petitioner was moved into A500, Petitioner and the other nine inmates

and/or pre-trial detainees were gathered in the common area when WARDEN CORE

approached Petitioner and said, in a loud, audible tone, "How does it feel to be on that side

of the bars Manton?" One of the inmates, verbally recognized Petitioner as a former police

officer who had arrested him.  Immediately after WARDEN CORE walked out of sight, all

nine pre-trial detainees and/or inmates jumped Petitioner and physically beat him to the point

that Petitioner was on the ground in the fetal position.  While Petitioner was on the ground,

some of the inmates/pre-trial detainees  rushed to Petitioner's cell and stole his personal

belongings.

<div align="center">60</div>

Staff of The jail did not make any attempt to rescue Petitioner or break-up the fight.

The  inmates/pre-trial detainees told Petitioner that they "would kill him" if he reported the

incident to any of the the jail's staff members.  Later that day, Petitioner's cell-mate, Frank

Knight, told Petitioner that the beating was "[Petitioner's] initiation" and that they "wouldn't

jump [Petitioner] again if he kept his mouth shut, but if you report us you'll get killed in here

motherf**ker; people die in here everyday."

<div align="center">61</div>

The inmate/pre-trial detainee that recognized Petitioner as a former police officer and

Frank Knight were not on the list of pre-trial detainees/inmates that DEPUTY WARDEN

LONGINO showed to Petitioner before being assigned to tier A500.

<div align="center">62</div>

WARDEN CORE and DEPUTY WARDEN LONGINO intentionally placed

Petitioner in a cell with violent offenders where Petitioner would be physically beaten by

other inmates.

<div align="center">63</div>

<div align="center">Page 23 of 58</div>

WARDEN CORE and DEPUTY WARDEN LONGINO conspired to violate Petitioner's civil rights by housing him in the same tier as inmates and/or pre-trial detainees that Petitioner had arrested and that WARDEN CORE and DEPUTY WARDEN LONGINO knew would physically abuse, threaten, steal from and harass Petitioner.

64

Some time after the physical beating incident, while Petitioner was assigned to tier A500, he was confronted by SERGEANT O'CULL. Specifically, SERGEANT O'CULL, escorted Petitioner to a remote location inside The jail and told Petitioner that if he pled guilty SERGEANT O'CULL would "see to it that you only get 40 years, not the needle."

65

WARDEN CORE, DEPUTY WARDEN LONGINO and SERGEANT O'CULL conspired in an effort to get Petitioner to confess to committing an alleged murder, that to this day has not been substantiated. WARDEN CORE, DEPUTY WARDEN LONGINO and SERGEANT O'CULL intentionally housed Petitioner with pre-trial detainees and/or inmates that WARDEN CORE, DEPUTY WARDEN LONGINO and SERGEANT O'CULL knew would physically beat, threaten, intimidate and harass Petitioner.

66

Petitioner, NORMAN J. MANTON, JR., was falsely arrested and charged with a crime that he did not commit and arguably, by innuendo, was accused of committing an alleged homicide that has never been substantiated.

67

Petitioner was only allowed outside three times during his four month and five day incarceration, contrary to jail regulations, especially as a pre-trial detainee convicted of no crime.

68

On May 29, 2008, the State of Louisiana, nolle prossed the charge against Petitioner, and Petitioner was released from the jail.  Petitioner was deprived of his freedom for **four months and five days (126 days total) inside the jail** as he was being kept on a probation hold.

69

Petitioner has not been able to find gainful employment since his release from The jail.  Petitioner has nightmares about this horrible experience.  Petitioner lives in constant fear that this could somehow happen again.

70

After his release, Petitioner met with SHERIFF STRAIN, WARDEN STRAIN and MAJOR OSWALD. During that meeting, SHERIFF STRAIN told Petitioner that he [SHERIFF STRAIN] did not know that Petitioner was even being held inside The jail. SHERIFF STRAIN also repeatedly said "it was our warrant" and all three Defendants, SHERIFF STRAIN, WARDEN STRAIN and MAJOR OSWALD apologized profusely to Petitioner for their actions and omissions.

71

In fact, SHERIFF STRAIN has no idea who is being housed inside the jail at any given time and SHERIFF STRAIN either does not know of, or intentionally ignores, the day-to-day atrocities that occur inside The jail. Either way, SHERIFF STRAIN does not take any reasonable measure to oversee the internal workings and operations of The jail to make sure that detainees and inmates are receiving fair treatment, although he is, in fact, "the keeper of the jail," pursuant to La. R.S. 15:704.

72

As a direct and proximate result of the acts and omissions of Defendants, Petitioner continues to experience severe emotional distress, feel pain, embarrassment, humiliation and mental anguish from the injuries caused by the Defendants. Petitioner's reputation has been permanently damaged. Petitioner's financial losses have been incredible. Petitioner has become deathly afraid of police officers and has become a recluse, afraid to leave his home. In addition, Petitioner was deprived of his physical and mental liberties, and was forced to incur legal expenses and costs.

73

Upon information and belief, at all times pertinent hereto, Defendant, SHERIFF STRAIN, permitted and tolerated a pattern and practice of cruel and unusual punishment by St. Tammany Parish Sheriff's Deputies and staff members both inside and outside of The jail.

74

At no time whatsoever did Defendants have probable cause to believe Petitioner,

NORMAN J. MANTON, JR., had committed or was committing a crime.

75

Defendants acted with actual malice toward Petitioner, NORMAN J. MANTON, JR., and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of Petitioner. The Defendants' actions constitute unconstitutional profiling and discrimination, cruel and unusual punishment, deprivation of the necessities to properly maintain life and deprivation of liberty without due process of law.

76

The acts, policies, and customs of Defendants, SHERIFF STRAIN and THE PARISH OF ST. TAMMANY regarding treatment of pre-trial detainees is such that it is foreseeable that its deputies and staff members are likely to engage in the use of cruel and unusual punishment and wrongful arrest against Petitioner, NORMAN J. MANTON, JR., and others in the future.

77

Upon information and belief, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY have maintained a system of review of deputy and staff conduct which is so untimely and cursory as to be ineffective and to permit and tolerate the practice of cruel and unusual punishment, wrongful arrest, and all other wrongful acts and omissions described herein.

78

The acts, omissions, systematic flaws, policies, and customs of SHERIFF STRAIN

and THE PARISH OF ST. TAMMANY have caused deputies, guards, detectives and staff members of the St. Tammany Parish Sheriff's Office and THE ST. TAMMANY PARISH JAIL to believe that cruel and unusual punishment, wrongful arrest, conspiracies to make pre-trial detainees and inmates plead guilty to crimes they did not commit and physical and mental harassment would not be aggressively, honestly, and properly investigated, with the foreseeable result that deputies, guards, detectives and staff members are more likely to use cruel and unusual punishment and the other wrongful acts and omissions described herein against Petitioner, NORMAN J. MANTON, JR. and others in the future.

<div align="center">79</div>

All improper acts, conduct and behavior of Defendants as set forth in extenso hereinabove were performed knowingly, intentionally and maliciously and were motivated by bad faith.

<div align="center">80</div>

<div align="center">

### CLAIMS FOR RELIEF

### FEDERAL CAUSES OF ACTION

### COUNT I:VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

</div>

Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON, incorporate herein by reference the allegations contained in paragraphs 1 through 79.

<div align="center">81</div>

It was the policy and practice of Defendant, SHERIFF STRAIN, to employ certain

<div align="center">Page 28 of 58</div>

police officers, detectives and staff members, including Defendant SERGEANT O'CULL, mentioned in the foregoing paragraphs.

<center>82</center>

The right of Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MONTON, to be secure in their house, papers and effects, against unreasonable search and seizure was violated through the dishonest and wrongful acts of Defendant, SERGEANT O'CULL. More particularly, SERGEANT O'CULL, attested to facts that he knew to be false inside the affidavit that led to the unreasonable search of Petitioners' home and the unreasonable seizures that followed that search.

<center>83</center>

At all times pertinent hereto, Defendant, SERGEANT O'CULL, was acting in the course and scope of his employment as a Deputy under the employ of Defendant, SHERIFF STRAIN.

<center>84</center>

Upon information and belief, at all times pertinent hereto, it was the custom and policy of Defendant, SHERIFF STRAIN, and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs; said Defendant refused to adequately train, direct, supervise, or control Defendant officers, detectives and staff members so as to prevent the violation of Petitioner's constitutional rights.

85

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, SHERIFF STRAIN and SERGEANT O'CULL, Petitioners' were deprived of their right to due process in violation of 42. U.S.C. § 1983.

86

The search and seizure effected by the wrongful conduct of Defendants, SERGEANT O'CULL and SHERIFF STRAIN was done with actual malice toward Petitioners and with willful and wanton indifference to and deliberate disregard for the Constitutional rights of Petitioners. Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON, are thus entitled to punitive damages, in addition to all available compensatory and special damages.

87

**COUNT II:VIOLATION OF RIGHT TO PHYSICAL LIBERTY**

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 86.

88

It was the policy and practice of Defendant, SHERIFF STRAIN, to employ certain police officers, detectives and staff members, including Defendants, SERGEANT O'CULL

Case 2:09-cv-00339-SSV-DEK   Document 1   Filed 01/26/09   Page 31 of 58

and FRED OSWALD, mentioned in the foregoing paragraphs.

<center>89</center>

It was the policy and practice of Defendant, SHERIFF STRAIN, to authorize certain officers, including Defendants, SERGEANT O'CULL and FRED OSWALD, to attest to facts that they knew to be false in affidavits that request the issuance of arrest warrants and to cover up the wrongful arrests that were performed under the authority of those wrongfully obtained warrants.  This policy and practice of Defendant, SHERIFF STRAIN, encouraged and caused constitutional violations by police officers of the St. Tammany Parish Sheriff's Department, including the violation of Petitioner's constitutional rights by Defendants, SERGEANT O'CULL and FRED OSWALD, described in the foregoing paragraphs. The civil rights of Petitioner, NORMAN J. MANTON, JR., were violated through the dishonest and wrongful acts of Defendants, SERGEANT O'CULL and FRED OSWALD.  More particularly, SERGEANT O'CULL, attested to facts that he knew to be false inside the affidavit requesting that a warrant be issued for Petitioner's arrest and subsequently arrested Petitioner after being ordered to do so by FRED OSWALD.

<center>90</center>

At all times pertinent hereto, Defendants, SERGEANT O'CULL and FRED OSWALD, were acting in the course and scope of their employment as a Deputies under the employ and supervision of Defendant, SHERIFF STRAIN.

<center>91</center>

Upon information and belief, at all times pertinent hereto, it was the custom and policy

of Defendant, SHERIFF STRAIN, and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs; said Defendant refused to adequately train, direct, supervise, or control Defendant officers, detectives and staff members so as to prevent the violation of Petitioner's constitutional rights.

92

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, SHERIFF STRAIN, SERGEANT O'CULL and FRED OSWALD, Petitioners' were deprived of their right to due process in violation of 42. U.S.C. § 1983.

93

The wrongful arrest of Petitioner performed under the authority of a wrongfully issued arrest warrant, effected by the wrongful conduct of Defendants, SHERIFF STRAIN, SERGEANT O'CULL and FRED OSWALD, was done with actual malice toward Petitioner and with willful and wanton indifference to and deliberate disregard for the Constitutional rights of Petitioner. Petitioner, NORMAN J. MANTON, JR., is thus entitled to punitive damages, in addition to all available compensatory and special damages.

94

## COUNT III:VIOLATION OF RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 93.

95

It was the policy and practice of Defendants, SHERIFF STRAIN, to employ certain police officers, detectives and staff members, including Defendants, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE and GUARD(S) JAMES DOE mentioned in the foregoing paragraphs.

96

Petitioner's being kept locked inside of the Squirrel Cage for 4 ½ days by Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, under color of state and local law, constitutes a deliberate indifference to Petitioner's right to not be the subject of cruel and unusual punishment.

97

It was the policy and practice of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , to authorize certain officers and staff members, including Defendants, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, to lock pre-trial detainees and/or inmates inside of the Squirrel Cage for overly extended periods of time.  This policy and practice of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY, encouraged and caused constitutional violations by certain officers and staff members, including the violation of Petitioner's constitutional rights described in the foregoing

paragraphs, namely the right to not be subjected to cruel and unusual punishment.

<div align="center">98</div>

At all times pertinent hereto, Defendants, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, were acting in the course and scope of their employment as a Deputies under the employ and supervision of Defendant, SHERIFF STRAIN.

<div align="center">99</div>

Upon information and belief, at all times pertinent hereto, it was the custom and policy of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs; said Defendant refused to adequately train, direct, supervise, or control Defendant officers, detectives and staff members so as to prevent the violation of Petitioner's constitutional rights.

<div align="center">100</div>

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, SHERIFF STRAIN, THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, Petitioner was deprived of his right to due process in violation of 42. U.S.C. § 1983.

<div align="center">101</div>

The cruel and unusual punishment inflicted upon Petitioner described hereinabove was done with actual malice toward Petitioner and with willful and wanton indifference to and deliberate disregard for the Constitutional rights of Petitioner. Petitioner, NORMAN J. MANTON, JR., is thus entitled to punitive damages, in addition to all available compensatory and special damages.

<div align="center">102</div>

## COUNT IV: VIOLATION OF RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 101.

<div align="center">103</div>

It was the policy and practice of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY, to employ certain police officers, detectives and staff members, including Defendants, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE and GUARD(S) JAMES DOE mentioned in the foregoing paragraphs.

<div align="center">104</div>

The following individual acts and omissions, of Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, all of which were performed under color of State law, constitute

a deliberate indifference to the constitutional rights of Petitioner:

(a)    Refusing Petitioner access to a bathroom for 4 ½ days;

(b)    Giving Petitioner only one sandwich for 4 ½ days;

(c)    Refusing to allow Petitioner to take the prescription medications necessary for his personal well being;

(d)    Refusing to allow Petitioner to use the telephone so that he could "make his one phone call"

105

At all times pertinent hereto, Defendants, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, were acting in the course and scope of their employment as a Deputies under the employ and supervision of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY .

106

Upon information and belief, at all times pertinent hereto, it was the custom and policy of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs; said Defendant refused to adequately train, direct, supervise, or control Defendant officers, detectives and staff members so as to prevent the violation of Petitioner's constitutional rights.

107

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, SHERIFF STRAIN, THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, Petitioner was deprived of his right to due process in violation of 42. U.S.C. § 1983.

108

The cruel and unusual punishment inflicted upon Petitioner described hereinabove was done with actual malice toward Petitioner and with willful and wanton indifference to and deliberate disregard for the Constitutional rights of Petitioner. Petitioner, NORMAN J. MANTON, JR., is thus entitled to punitive damages, in addition to all available compensatory and special damages.

109

**COUNT V:VIOLATION OF RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT**

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 108.

110

It was the policy and practice of Defendants, SHERIFF STRAIN, to employ certain police officers, detectives and staff members, including Defendants, WARDEN STRAIN,

WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE and GUARD(S) JAMES DOE mentioned in the foregoing paragraphs.

111

Petitioner's being kept **locked inside an isolation cell for 93 days as a pre-trial detainee** by Defendants, THE PARISH OF ST. TAMMANY, and/or SHERIFF STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, under color of state and local law, constitutes a deliberate indifference to Petitioner's right to not be the subject of cruel and unusual punishment.

112

Petitioner's being kept **locked inside an isolation cell for 93 days as a pre-trial detainee** without being provided adequate clothing, bedding and hygienic materials by Defendants, THE PARISH OF ST. TAMMANY, and/or SHERIFF STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, under color of state and local law, constitutes a deliberate indifference to Petitioner's right to not be the subject of cruel and unusual punishment.

113

It was the policy and practice of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , to authorize certain officers and staff members, including

Defendants, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, to lock pre-trial detainees and/or inmates inside isolation cells for overly extended periods of time. This policy and practice of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , encouraged and caused constitutional violations by certain officers and staff members, including the violation of Petitioner's constitutional rights described in the foregoing paragraphs, namely the right to not be subjected to cruel and unusual punishment.

114

At all times pertinent hereto, Defendants, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, were acting in the course and scope of their employment as a Deputies under the employ and supervision of Defendant, SHERIFF STRAIN.

115

Upon information and belief, at all times pertinent hereto, it was the custom and policy of Defendants, SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY , and unknown supervisors who supervised the deputies who unlawfully violated Petitioner's rights, encouraged and tolerated the policies and practices described in the foregoing paragraphs; said Defendant refused to adequately train, direct, supervise, or control Defendant officers, detectives and staff members so as to prevent the violation of Petitioner's constitutional rights.

116

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, SHERIFF STRAIN, THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, WARDEN STRAIN, and GUARD(S) JAMES DOE, Petitioner was deprived of his right to due process in violation of 42. U.S.C. § 1983.

117

The cruel and unusual punishment inflicted upon Petitioner described hereinabove was done with actual malice toward Petitioner and with willful and wanton indifference to and deliberate disregard for the Constitutional rights of Petitioner. Petitioner, NORMAN J. MANTON, JR., is thus entitled to punitive damages, in addition to all available compensatory and special damages.

118

**COUNT VI: CUSTOM AND POLICY OF CONSTITUTIONAL VIOLATIONS**

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 117.

119

Upon information and belief, prior to January 25, 2007, Defendants, THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE

permitted, encouraged, tolerated and ratified an unjustified and unreasonable pattern and

practice of failure to provide adequate medical care to pre-trial detainees and/or inmates

and/or exhibited a deliberate indifference to serious medical needs of pre-trial detainees

and/or inmates in that:

    (a)    Initial requests for medical attention by persons being held in isolation cells are systematically and routinely ignored;

    (b)    Repeated requests for medical attention by jail inmates are systematically and routinely ignored;

    (c)    Requests for medical care that are made on Saturdays and/or Sundays are systematically and routinely ignored;

    (d)    Access to proper medical care is not made available to jail inmates on Saturdays and/or Sundays;

    (e)    Medical doctors are not employed to work inside the jail on Saturdays and/or Sundays;

    (f)    Pre-trial detainees and inmates are refused their prescription medications necessary for their physical well being;

    (g)    Defendants refuse to address requests of need for medical care;

    (h)    By means of both inaction and a cover-up of such denial, delay or intentional interference with medical treatment of inmates, Defendants encouraged jail staff employed by it to believe that such omissions towards its pre-trial detainees and inmates was acceptable permissible.

120

Other incidents of failure provide adequate medical care and/or deliberate indifference

to serious medical needs of detainees and inmates include the recent situation of the Herbert

Spruell, a pre-trial detainee, where jail guards stole Mr. Spruell's prosthetic leg and refused

to give him a wheelchair and nicknamed him "Hoppy" because he was required to "hop on one leg" when trying to navigate around other detainees inside a holding cell and David Jones, who fell off the top bunk in his cell, causing him sustain severely painful injuries, after requesting that he be assigned a bottom bunk, which was in fact available at the time.

<div align="center">121</div>

Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE, have maintained an inadequate system of review of requests for medical attention which system has caused prison staff to fail to identify instances where medical attention is essential or to discipline, more closely supervise, or retrain prison staff who are, in fact, initially responsible for investigating the medical complaints of inmates, as your Petitioner was denied his prescription medications the entire time he was kept in jail as a pre-trial detainee.

<div align="center">122</div>

On information and belief, the systemic deficiencies include but are not limited to:

(a)   Allowing untrained and unqualified prison staff primary supervision, for all practical purposes, over detainee and inmate requests for medical care;

(b)   Failure to train or instruct prison staff to recognize the very basic signs of serious medical conditions;

(c)   Failure to train or instruct prison staff to timely address the complaints of prisoners with serious medical conditions;

(d)   Failure to train or instruct prison staff that detainees and inmates have

<div align="center">Page 42 of 58</div>

protected rights to receive adequate medical care;

(e)    Failure to establish a meaningful procedure for the review and evaluation of detainee and inmate medical complaints;

(f)    The operation of a sub-standard and biased procedure for the review and evaluation of detainee and inmate medical complaints;

(g)    Failure to allow detainee and inmates access to a meaningful evaluation by a qualified jail physician when the circumstances so warrant;

(h)    Failure to make use of the services of the jail physician to make "rounds" once a day to personally investigate the detainees' and inmates' complaints of need for medical care;

(i)    Failure to establish policies which allow for the review of medical complaints on a timely basis;

(j)    Failure to advise detainees and inmates who have requested medical care of the reason that their requests have been denied or gone unaddressed;

(k)    Failure to advise detainees and inmates of alternate procedures to seek medical care when their complaints to have been denied or gone unaddressed;

(l)    Failure to provide medical request forms that prompt detainee and inmates, some of whom are of lower educational levels, to describe the cause and symptoms which have given rise to the request; and

(m)    Failure to make medical doctors available to pre-trial detainees and inmates on Saturdays and Sundays.

123

Upon information and belief, Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE also

maintain a system of grossly inadequate training pertaining to the recognition of obvious medical needs which fails to meet standard jailing or training principles.

<div align="center">124</div>

The foregoing acts, omissions, and systematic deficiencies are policies and customs of Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE which cause prison staff to be unaware of the rules and laws governing a detainee's and/or inmate's right to adequate medical care to believe that the validity of a medical complaint is entirely within the discretion of the prison staff and that failure to provide needed medical care would not honestly and properly investigated, all with the foreseeable result that the staff of ST. TAMMANY PARISH JAIL is more likely to ignore serious medical complaints in situations where such omissions are neither reasonable nor legal, as evidenced by the fact that your Petitioner was denied his prescription medications, particularly blood pressure medication, cholesterol medication, anti-anxiety medication, sleeping medication, ADHD medication and a blood thinner.

<div align="center">125</div>

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE, Petitioner was deprived of his rights to due process in violation of 42 U.S.C. § 1983.

<div align="center">Page 44 of 58</div>

126

As a direct and proximate result of the aforesaid acts, omissions, systematic deficiencies, policies and customs of Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE, Petitioner was deprived of his right to receive proper medical care in violation of 42 U.S.C. § 1983.

127

**COUNT VII: VIOLATION OF CONSTITUTIONAL RIGHTS**

Petitioner, NORMAN J. MANTON, JR. incorporates herein by reference the allegations contained in paragraphs 1 through 126.

128

The cruel and unusual punishment of Petitioner, NORMAN J. MANTON, JR. by Defendants, THE ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, and WARDEN CORE, violated the rights of Petitioner, NORMAN J. MANTON, JR. as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, for which the Defendants are individually liable.

129

**COUNT VIII: CONSPIRACY TO MAKE PETITIONER PLEAD GUILTY**

Petitioner, NORMAN J. MANTON, JR., incorporates herein by reference the allegations contained in paragraphs 1 through 128.

130

It was the policy and practice of Defendant, SHERIFF STRAIN, to employ certain

police officers, detectives and staff members, including Defendants SERGEANT O'CULL,

MAJOR OSWALD, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN

LONGINO, WARDEN CORE and GUARD(S) JAMES DOE, described in the foregoing

paragraphs.

131

SHERIFF STRAIN, WARDEN CORE, DEPUTY WARDEN LONGINO, WARDEN

STRAIN, MAJOR OSWALD and SERGEANT O'CULL conspired in an effort to get

Petitioner to plead guilty to an alleged murder that Petitioner did not commit, nor is there any

evidence that a murder ever indeed occurred.  To effectuate said Defendants conspiracy,

Petitioner was intentionally housed with pre-trial detainees and/or inmates that the

Defendants knew would physically beat, threaten, intimidate and harass Petitioner, believing

that your Petitioner would say or do anything to get out of the squaller conditions as he feared

for his life.  Said conspiracy violated the rights of Petitioner, NORMAN J. MANTON, JR.

as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States

Constitution, and 42 U.S.C. § 1983.

132

It was the policy and practice of Defendants, SHERIFF STRAIN, WARDEN CORE,

DEPUTY WARDEN LONGINO, WARDEN STRAIN, MAJOR OSWALD and

SERGEANT O'CULL to conspire against pre-trial detainees and/or inmates and take

affirmative steps to get pre-trial detainees and/or inmates to plead guilty to crimes they did

not commit. Upon information and belief, it was also the custom and practice of said

Defendants to cover up their conspiracy, thereby encouraging and causing some or all of

constitutional violations described in the foregoing paragraphs.

133

At all times pertinent hereto, Defendants, SHERIFF STRAIN, THE ST. TAMMANY

PARISH JAIL, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN

LONGINO, WARDEN CORE, GUARD(S) JAMES DOE and unknown supervisors who

supervised the officers who unlawfully violated Petitioner's rights, encouraged and tolerated

the policies and practices described in the foregoing paragraphs; said Defendant refused to

adequately train, direct, supervise, or control Defendant officers, detectives and staff

members so as to prevent the violation of Petitioner's constitutional rights, in violation of 42

USC § 1983.

134

At all times pertinent hereto, Defendants, SHERIFF STRAIN, WARDEN CORE,

DEPUTY WARDEN LONGINO, WARDEN STRAIN, MAJOR OSWALD, SERGEANT

O'CULL and GUARD(S) JAMES DOE were acting within the course and scope of their

employment and pursuant to the aforementioned policies and practices of Defendants,

SHERIFF STRAIN and/or THE PARISH OF ST. TAMMANY. These policies and practices

were enforced by Defendants, SHERIFF STRAIN and THE ST. TAMMANY PARISH

JAIL, and were the moving force, proximate cause, or affirmative link behind the conduct causing Petitioner's injuries. SHERIFF STRAIN and THE ST. TAMMANY PARISH JAIL are therefore liable for the violation of Petitioner's constitutional rights by Defendants, SERGEANT O'CULL, MAJOR OSWALD, WARDEN STRAIN, WARDEN PEACHEY, WARDEN STRAIN, DEPUTY WARDEN LONGINO, WARDEN CORE and GUARD(S) JAMES DOE.

<center>135</center>

<center>**COUNT IX:NEGLECT TO PREVENT CONSPIRACY**</center>

Petitioner, NORMAN J. MANTON, JR., hereby incorporates herein by reference the allegations contained in paragraphs 1 through XX.

<center>136</center>

Defendants, SHERIFF STRAIN, ST. TAMMANY PARISH JAIL and/or THE PARISH OF ST. TAMMANY, had knowledge of the wrongs conspired to be done to Petitioner, or about to be committed, and said Defendants had the power to prevent or aid in preventing the commission of the same but neglected or failed to do so despite the fact that reasonable diligence to prevent the wrongs was within their power.

<center>137</center>

Defendant, THE PARISH OF ST. TAMMANY'S neglect to prevent the conspiracy renders it liable under 42 USC § 1986.

<center>138</center>

Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY,

DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL and GUARD(S) JAMES DOE and unknown supervisors had knowledge of the wrongs conspired to be done to Petitioner, or about to be committed, and said Defendants had the power to prevent or aid in preventing the commission of the same but neglected or failed to do so despite the fact that reasonable diligence to prevent the wrongs was within their power.

139

Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, SERGEANT O'CULL and GUARD(S) JAMES DOE's neglect to prevent the conspiracy renders them liable under 42 USC § 1986.

140

## PENDENT CLAIMS

## COUNT X: NEGLIGENCE

Petitioner, NORMAN J. MANTON, JR., hereby incorporates herein by reference the allegations contained in paragraphs 1 through 139.

140

Petitioner specifically invokes the supplemental jurisdiction of this Honorable Court to hear and determine the pendent claims presented in this Original Complaint.

141

The direct and proximate cause of Petitioner, NORMAN J. MANTON'S, injuries and

damages complained of, and set forth in detail hereinabove, as well as the mental anguish, loss of enjoyment of life and loss of income/loss of earning capacity, was the gross and wanton negligence, carelessness and recklessness of Defendants, SHERIFF STRAIN, and/or THE PARISH OF ST. TAMMANY, though its employees, agents and members as detailed herein, supra, in the following particulars, to-wit:

(a)   Failing to properly screen the placement of pre-trial detainees and inmates prior to assigning them a cell, so as to prevent any potential conflict between the two, *i.e.* placing a former police officer in the same tier as an inmate/pre-trial detainee that he arrested and placing a former police officer in a cell with a person awaiting trial for four counts of first degree murder;

(b)   Failing to adhere to the proper standards of care for the maintenance and safety of pre-trial detainees and inmates;

(c)   Failing to instruct/train deputies that it is illegal to falsify information in affidavits in order to procure warrants for the search of an individuals home;

(d)   Failing to instruct/train deputies that it is illegal to falsify information in affidavits in order to procure warrants for the arrest of an individual;

(e)   Failing to properly supervise deputies and staff members of The jail;

(f)   Failure to respond timely and properly to the complaints and needs of injured detainees and inmates;

(g)   Failing to maintain safe living conditions for detainees and inmates, generally;

(h)   Negligent hiring of individuals unable to competently perform the duties required of them;

(i)   Failure to adequately train, supervise, discipline or in any way control jail staff in the exercise of their duties towards detainees and inmates;

(j)    Failure to enforce the laws of the State of Louisiana and the regulations of the St. Tammany Parish Sheriff's Office pertaining to the care of detainees and inmates;

(k)    Denial, delay and/or intentional interference with Petitioner's medical treatment;

(l)    Disregard of serious medical needs;

(m)    Deliberate indifference to serious medical needs;

(n)    Failure to exercise cautious regard for the rights of detainees and inmates;

(o)    General failure to maintain a safe environment for detainees and inmates; and

(p)    all other acts of negligence which will be proven upon the trial of this matter; all in violation of the pertinent statutes of the State of Louisiana and ordinance of the Parish of St. Tammany, which are specifically pled herein as is det forth in extenso as well as all violations of constitutional and civil rights protected by the United States and the State of Louisiana.

142

At all times pertinent hereto, Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL and GUARD(S) JAMES DOE, were acting in the course and scope of their employment with Defendant, THE PARISH OF ST. TAMMANY who, under the doctrine of Respondeat Superior, is/are liable for the acts and/or omissions made the basis of this suit.

143

Alternatively, the acts and omissions made the basis of this suit occurred with the full

knowledge and consent of Defendant, THE PARISH OF ST. TAMMANY. The laws of

vicarious liability are plead herein as if set out in extenso.

<p style="text-align:center">144</p>

Alternatively, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY WARDEN

LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL and GUARD(S)

JAMES DOE, are individually liable for said acts and/or omissions and may not avail

themselves of the defense of qualified immunity as said Defendants created, supported and/or

promulgated the customs and policies which lead to the constitutional deprivations alleged

herein; Defendants' personal involvement with the handling of prisoner affairs and/or their

casual connection to the acts and omissions leading to the deprivation of constitutionally

protected rights further disqualify the doctrine of qualified immunity as a legitimate defense.

<p style="text-align:center">145</p>

### COUNT XI:   INTENTIONAL MISIDENTIFICATION

Petitioner, NORMAN J. MANTON, JR., hereby incorporates herein by reference the

allegations contained in paragraphs 1  through 144.

<p style="text-align:center">146</p>

Defendant, J.P. MORGAN CHASE BANK, is liable to your Petitioner, NORMAN

J. MANTON, JR., for the intentional misidentification of Petitioner in the second

photographic line-up, as its employee, Melissa Gerstner, knew or should of known that

Petitioner was not the suspect that attempted to cash a check(s) drawn on Albert Bloch's

<p style="text-align:center">Page 52 of 58</p>

checking account at the time she made the misidentification.

<div align="center">147</div>

Melissa Gerstner was acting within the course and scope of her employment as a teller for Defendant, J.P. MORGAN CHASE BANK at the time she made the misidentification of Petitioner and Defendant, J.P. Morgan Chase Bank is therefore liable for the damage caused by Melissa Gerstner's tortious misidentification.

<div align="center">148</div>

## COUNT XII:  BATTERY

Petitioner, NORMAN J. MANTON, JR., hereby incorporates herein by reference the allegations contained in paragraphs 1  through 147.

<div align="center">149</div>

WARDEN CORE and DEPUTY WARDEN LONGINO committed a battery Petitioner, NORMAN J. MANTON, JR., by intentionally placing him a tier with persons who they knew or should have known would cause serious physical harm and damage to the person of Petitioner.  More particularly, by placing him in the same tier as another detainee and/or inmate that Petitioner had arrested while Petitioner was a police officer and by assigning Petitioner to share a cell with a detainee accused of committing four counts of first degree murder.

<div align="center"></div>

150

WARDEN CORE is further liable for committing a battery on Petitioner, NORMAN

J. MANTON, JR., for the act of asking Petitioner "How does it feel to be on that side of the

bars Manton?" in a loud, audible tone, such that nine other detainees and/or inmates could

hear that question, as WARDEN CORE knew that the nine inmates and/or detainees would

cause severe physical harm to your Petitioner after learning that he was a former police

officer.

151

**COUNT XIII:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Petitioner, NORMAN J. MANTON, JR., hereby incorporates herein by reference the

allegations contained in paragraphs 1  through 150.

152

Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY,

DEPUTY WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT

O'CULL and GUARD(S) JAMES DOE, intentionally abused, humiliated and embarrassed

Petitioner, NORMAN J. MANTON, JR., in a manner that was extreme, outrageous, and

unjustified, and caused Petitioner to suffer physical and emotional distress for which

Defendants, SHERIFF STRAIN, WARDEN STRAIN, WARDEN PEACHEY, DEPUTY

WARDEN LONGINO, WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL and

GUARD(S) JAMES DOE, are individually liable.

153

## COUNT XIV: LOSS OF CONSORTIUM

Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON hereby incorporate herein by reference the allegations contained in paragraphs 1 through 152.

154

As a result of the wrongful conduct described in detail hereinabove, Petitioner, SHERRIE BURAS MANTON, suffered the loss of consortium of her husband, NORMAN J. MANTON, JR., for a period of four months and five days, while he was incarcerated.

155

Petitioner, SHERRIE BURAS MANTON, continues to suffer the loss of consortium of her husband, NORMAN J. MANTON, JR., because since his release from THE ST. TAMMANY PARISH JAIL, NORMAN J. MANTON, JR., has been afraid to become socially involved with members of the general public, and has suffered a decrease in desire to partake in sexual relations.

156

## DAMAGES

Petitioner, NORMAN J. MANTON, JR., itemizes his damages as follows:

(a)   COMPENSATORY DAMAGES

| | |
|---|---|
| Physical Pain and Suffering: | $250,000.00 |
| Mental Anguish: | $250,000.00 |
| Humiliation and Denial of Civil Rights: | $250,000.00 |
| Loss of Earnings/Earning Capacity: | $330,000.00 |
| Future Medical Expenses: | $ 20,000.00 (est.) |

    (b)    PUNITIVE DAMAGES:               $2,000,000.00

    (c)    Any and all other relief which this Honorable Court Deems appropriate, including attorney's fees.

Petitioner, SHERRIE BURAS MANTON, itemizes her damages as follows:

LOSS OF CONSORTIUM:              $150,000.00

157

The total monetary damages sought by Petitioners' herein is $3,250,000.00, excluding attorney's fees.

158

**ATTORNEY'S FEES**

Undersigned counsel specifically pleads his right to attorney's fees as authorized by the Civil Rights Attorney's Fees Awards Act of 1976, amending Title 42 U.S.C. Sec. 1988, for his actions in enforcing Sections 1983 and 1985 of Title 42 of the United States Code.

159

All of the Defendants named herein are liable unto your Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON, jointly, severally, and in solido.

160

Inasmuch as any of the allegations contained herein are inconsistent, they are deemed to have been pled in the alternative.

161

Petitioner is entitled to and requests a trial by jury.

### PRAYER FOR RELIEF

Petitioner prays that Defendants be duly served with a copy of the foregoing Original Complaint and that after all legal delays have expired that there be Judgment entered herein in favor of Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON, and against Defendants, SHERIFF STRAIN, WARDEN PEACHEY, WARDEN PEACHEY, DEPUTY WARDEN LONGINO,  WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, GUARD(S) JAMES DOE,  THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, THE PARISH OF ST. TAMMANY, MELISSA GERSTNER, J.P. MORGAN CHASE BANK, and SHERIFF'S INSURANCE FUND and XYZ INSURANCE COMPANY, jointly, severally and in solido, in the true and total sum of $3,250,000.00 on behalf of Petitioners, NORMAN J. MANTON, JR., and SHERRIE BURAS MANTON, plus any other further relief that this Court deems appropriate, including all costs and attorneys' fees as well as interest from the date of judicial demand until paid.

Petitioners further prays that this Court exercise its supplemental jurisdiction and hear any and all State law claims against Defendants, SHERIFF STRAIN, WARDEN PEACHEY, WARDEN PEACHEY, DEPUTY WARDEN LONGINO,  WARDEN CORE, MAJOR OSWALD, SERGEANT O'CULL, GUARD(S) JAMES DOE,  THE PARISH OF ST. TAMMANY, THE ST. TAMMANY PARISH JAIL, THE PARISH OF ST. TAMMANY, MELISSA GERSTNER, J.P. MORGAN CHASE BANK, and LOUISIANA SHERIFF'S

ASSOCIATION and XYZ INSURANCE COMPANY and for all other legal and equitable

relief that this Court deems appropriate.

Respectfully submitted,

D. DOUGLAS HOWARD, JR.
La. Bar Roll No. 7021
839 St. Charles Avenue, Suite 306
New Orleans, Louisiana 70130
Telephone: (504) 581-3610
Facsimile: (504) 581-7509
**COUNSEL FOR PETITIONERS,
NORMAN J. MANTON, JR. AND
SHERRIE BURAS MANTON**