```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA

NORMAN J. MANTON, JR. AND              CIVIL ACTION
SHERRIE BURAS MANTON

VERSUS                                 NO: 09-0339

RODNEY "JACK" STRAIN, JR., ET          SECTION: R(3)
AL.
```

**ORDER AND REASONS**

Before the Court is defendant J.P. Morgan Chase Bank's motion for summary judgment on plaintiff's claim that it is liable for its employee's alleged misidentification of plaintiff in a photographic lineup.[1] Because the Court finds that there is no evidence that Chase's employee acted maliciously, the motion is GRANTED.

**I.    BACKGROUND**

Manton filed suit in this Court on January 26, 2009, alleging violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988, as well a number state law tort claims against the St. Tammany Parish, the Louisiana Sheriff's Association, various officers of the St. Tammany Parish Sheriff's Office, various jail officials, Chase, and their insurance companies.[2] Manton's claims arise out

---

[1]    (R. Doc. 86.)

[2]    (R. Doc. 1.)

of his arrest for attempted access device fraud and detention at the St. Tammany Parish Jail. At issue is Manton's allegation that Chase is vicariously liable for the actions of its employee, Melissa Gerstner. According to Manton, Gerstner intentionally misidentified him in a photographic lineup as the person who attempted to cash a check on the account of a missing person, Albert Bloch.[3]

Manton asserts in his complaint that Gerstner identified him only after detectives expressed frustration at her inability to identify a suspect from the lineup and instructed her to "[j]ust pick Number 5."[4] Manton further alleges Gerstner revealed to Steve Martin, a prosecutor in the Louisiana State Attorney General's Office, that she chose Manton's photo at the insistence of detectives.[5]

Chase now moves for summary judgment based on sworn statements from Gerstner and Martin. Both Gerstner and Martin deny Manton's accusations. Gerstner testified, "I thought I identified the right person and I'm sorry," explaining that "[p]ictures are deceiving."[6] In an affidavit, Gerstner states that she "was in fact able to, and did positively identify a

---

[3] (*Id.*)

[4] (*Id.*)

[5] (*Id.*)

[6] (R. Doc. 120, Ex. 1.)

person whom [she] believed in good faith was the person who had attempted to cash the check."[7]  She denies that detectives were unhappy with her inability to make a positive identification, that detectives instructed her to "Just pick Number 5," or that she related that information to Martin.[8]  For his part, Martin states, "it is absolutely untrue" that Gerstner told him detectives were unhappy with her inability to make a positive identification, that Gerstner told him that detectives instructed her to "pick Number 5," or that Gerstner told him she had identified a person at the instruction or direction of detectives.[9]

In response, Manton submits the affidavit of August J. Hand, an attorney who previously represented him in this case.[10]  Hand states that, during his investigation, he asked Gerstner if the police suggested whom she should pick out of the second photographic lineup, and Gerstner said "yes, that the officer was very suggestive as to who she should pick."[11]  According to Hand, Gerstner said "the police pretty strongly suggested that she pick

---

[7]   (R. Doc. 113, Ex. A.)

[8]   (*Id.*)

[9]   (R. Doc. 86, Ex. B.)

[10]  (R. Doc. 113, Ex. A.)

[11]  (*Id.*)

the person who was in fact Norman Manton."[12]  Additionally, Manton provides his own affidavit, in which he states that Gerstner "testified and told me personally that she was sorry that she had picked me out of the line-up and that she knows that I was not the perpetrator."[13]

For the following reasons, the Court grants Chase's motion for summary judgment.

## II.   STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth

---

[12]   (*Id.*)

[13]   (R. Doc. 113, Ex. B.)

4

'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify

5

specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discover and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

### III. DISCUSSION

Manton alleges a single state law tort claim against Chase, which he calls "intentional misidentification."[14] He argues that Chase is vicariously liable for the actions of its employee, Gerstner, who knowingly misidentified him as the person who attempted to fraudulently cash a check at a Chase branch location.[15] Louisiana law does not recognize "intentional misidentification" as a cause of action, and Manton cites no case or statute in support of his argument. Manton's claim might plausibly be construed, however, as a claim of malicious prosecution. The Court thus analyzes it accordingly. *See, e.g.*, *Cook v. Am. Gateway Bank*, --- So. 3d ---, 2010 WL 3517946 (La. Ct. App. Sept. 10, 2010) (construing plaintiff's claim as one of malicious prosecution even though plaintiff never specifically

---

[14]   (R. Doc. 1.)

[15]   (*Id.*)

identified that cause of action); *Plessy v. Hayes Motor Co., Inc.*, 742 So. 2d 934, 938 (La. Ct. App. 1999) (same); *Kelley v. W. Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 760 (La. Ct. App. 1999) ("The plaintiff did not specifically refer to 'malicious prosecution' by name in her petition, but her allegations of fact concerning plaintiff's arrest by law enforcement officers were sufficient to raise the issue.").

A plaintiff must prove six elements to establish malicious prosecution: (1) the commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceedings, (3) its bona fide termination in favor of the present plaintiff, (4) the absence of probable cause for the proceedings, (5) the presence of malice, and (6) resulting damage to the plaintiff. *Miller v. E. Baton Rouge Parish Sheriff's Dept.*, 511 So. 2d 446, 452 (La. 1987); *Robinson v. Goudchaux's*, 307 So. 2d 287, 289 (La. 1975) (quoting *Eusant v. Unity Industrial Life Ins. Ass'n*, 196 So. 554 (La. 1940)). The Louisiana Supreme Court has indicated that "actions of this sort have never been favored" and a "clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent." *Johnson v. Pearce*, 313 So. 2d 812, 816 (La. 1975).

Manton has failed to create an issue of material fact as to the first element of malicious prosecution. With regard to malice, the Louisiana Supreme Court has explained:

> Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recovery property, to compel performance of a contract, to "tie up the mouths" of witnesses in another action, or as an experiment to discover who might have committed the crime.

*Miller*, 511 So. 2d at 453 (citing W. Keeton *et al.*, *Prosser and Keeton on the Law of Torts* § 119 (5th ed. 1984)). Malice may also be inferred from a finding that the defendant acted in reckless disregard of the other person's rights. *Miller*, 511 So. 2d at 453.

Manton has submitted no evidence that Gerstner misidentified him for the purpose of obtaining any sort of private advantage. In his complaint, Manton claims Gerstner admitted to Steve Martin that detectives were unhappy with her inability to make a positive identification and that they instructed her to "Just pick Number 5," which Gerstner did.[16] Martin and Gerstner specifically deny that allegation.[17] In her affidavit, Gerstner stated that she identified Manton as the person whom she believed in good faith was the person who tried to cash the check.[18] She

---

[16] (R. Doc. 1.)

[17] (R. Doc. 86, Exs. A, B.)

[18] (R. Doc. 113, Ex. A.)

further testified that she "thought she chose the right person, honestly."[19]

Manton relies on the affidavit of his former attorney, August Hand to argue that Gerstner acted with reckless disregard of his rights.  This argument is wide of the mark.[20]  Hand states that Gerstner told him "the officer was very suggestive as to who she should pick" and that "the police pretty strongly suggested that she pick the person who was in fact Norman Manton."[21]  Hand's affidavit is insufficient to create a genuine issue of material fact as to whether Gerstner acted with recklessness.  In the defamation context, the Louisiana Supreme Court has stated that "only those false statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard."  *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 688 (La. 2006) (citing *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)).  Hand's statement does not establish that Gerstner acted with a high degree of awareness that her identification was false.  Gerstner did not tell Hand that she believed at the time that she was likely identifying the wrong person.  Nor did Gerstner tell Hand that she was pressured  by police to identify someone whom she felt she could not identify.  At most, Hand's

---

[19]   (R. Doc. 120, Ex. 1.)

[20]   (R. Doc. 113, Ex. A.)

[21]   (*Id.*)

statements create an issue of fact as to whether the police suggested that Gerstner identify Manton.  This is not enough, however, to infer malice based on a reckless disregard for Manton's rights, as there is no evidence Gerstner had a high degree of awareness that she was making a false identification.

Nor does Manton's own affidavit create a genuine issue of material fact with regard to malice.  Manton states that Gerstner "testified and told me personally that she was sorry that she had picked me out of the line-up and that she knows I was not the perpetrator."[22]  Manton misstates Gerstner's deposition testimony.  What Gerstner actually said was "I thought I identified the right person and I'm sorry."[23]  She explained that "[p]ictures are deceiving," but that she "thought [she] chose the right person, honestly."[24]  Gerstner's testimony demonstrates that, while she apologized for misidentifying Manton, she believed her identification was accurate at the time.  Because Manton has not established malice, he cannot hold Chase liable for malicious prosecution.

Even assuming the existence of a free-standing tort of "intentional misidentification," Manton has failed to point to facts that would tend to establish that Gerstner's

---

[22]   (R. Doc. 113, Ex. B.)

[23]   (R. Doc. 120, Ex. 1.)

[24]   (*Id.*)

10

misidentification was, in fact, intentional.  Gerstner testified that she "thought she identified the right person."[25]  She also denies Manton's allegation that she could not positively identify a person whom she believed in good faith to be the person who attempted to cash the check.  Neither Hand nor Manton provide competent evidence that Gerstner knew, at the time, that she had misidentified Manton.  Consequently, Manton's claim must fail.

Manton further argues in his response but not in his complaint that Gerstner's false identification was "exacerbated" by Chase's failure to have functioning security cameras and "minimum security devices and procedures."[26]  He asserts that, had Chase complied with the relevant regulations, he would have been "protected from the misidentification and Gerstner would have been protected from being pressured by the police."[27]  Putting aside that Manton did not allege an independent breach of duty by Chase in his complaint, but alleged only vicarious liability for Gerstner's conduct, Manton has not shown that Chase owned him a duty with regard to its security system and procedures.  Further, he acknowledges that failure to comply with federal and state regulations does not give rise to a private

---

[25]   (*Id.*)

[26]   (R. Doc. 113.)

[27]   (*Id.*)

cause of action.[28]  The adequacy of Chase's security system is immaterial to Manton's claim that Gerstner tortiously misidentified him and does not establish an independent basis for liability against Chase.

**IV.  CONCLUSION**

For the foregoing reasons, Chase's motion for summary judgment is GRANTED.

New Orleans, Louisiana, this 27th day of September, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[28]   (*Id.*)