UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NORMAN J. MANTON, JR. AND<br>SHERRIE BURAS MANTON | CIVIL ACTION |
| VERSUS | NO. 09-339 |
| RODNEY "JACK" STRAIN, JR., ET AL. | SECTION "R" (3) |

REPORT AND RECOMMENDATION

On January 19, 2011, Defendants' Motion to Tax Costs and Attorneys' Fees Pursuant to Rule 54(d)(1) & (2) of Federal Rules of Civil Procedure and 28 U.S.C. § 1927 [Doc. #152] came on for oral hearing before the undersigned. Present were Daniel Abel on behalf of plaintiffs and Ryan Davis on behalf of defendant. Having reviewed the record, the motion, the memoranda, the case law and the parties' oral arguments, the Court rules as follows.

**I.    Background**

Norman Manton ("Manton" or "plaintiff") and Sherrie Buras Manton (collectively, "plaintiffs") filed this Section 1983, 1985, 1986 and 1988 lawsuit on January 26, 2009 against Sheriff Rodney "Jack" Strain and his employees, Marlin Peachey, Gregory Longino, Mike Core, Fred Oswald, Brian O'Cull and other guards ("James Doe"), the Parish of St. Tammany, the Louisiana Sheriff's Association, J.P. Morgan Chase Bank and XYZ Insurance Company. The lawsuit alleges the intentional, malicious and discriminatory deprivation of plaintiff's rights and

seeks to redress atrocities perpetrated by the St. Tammany Parish Deputies who placed plaintiff in custody on January 24, 2008 and kept him for 93 days (as a pre-trial detainee) under a search and arrest warrant intentionally and falsely sworn against him.

The complaint alleges as follows. Manton was a former officer in the Covington Police Department ("CPD") from 1987 through 1997. Plaintiff was assigned to the narcotics division of the St. Tammany Parish Sheriff's Department. He left the CPD in 1997 and became a commissioned deputy of the St. Tammany Parish Sheriff's Office ("STPSO"). After he retired, he became a contractor and ran a full-time contracting business. During the time of the acts in question, Manton was on active probation and was subsequently released from probation and granted an automatic first offender pardon pursuant to Louisiana Revised Statute § 15:572.

In November 2007, an investigation began to address the disappearance of Albert Bloch and the possible involvement of former Jefferson Parish Deputy Mark Hebert. An unidentified individual had attempted to cash checks drawn on Bloch's account at the Covington Branch of Chase on 409 E. Boston Street in Covington, Louisiana. Melissa Gerstner, the bank teller, was interviewed, was presented two photo line ups and could not recognize anyone. The second time that she viewed the photo line ups, the deputies told her to just pick Number 5, which Gerstner did. She admitted this to Steve Martin, Esq., a prosecutor for the Louisiana State Attorney General's Office.

Manton was Number 5 in the second photo line up. Sergeant O'Cull allegedly swore a false affidavit for Manton's arrest for committing the crime of Attempted Access Device Fraud. O'Cull had knowledge of the misidentification because he knew of the deputies' instruction to Gerstner to pick Number 5. Manton's home was searched unbeknownst to him. The search revealed nothing.

Manton was arrested, taken to jail, and the deputies interrogated him about Hebert. He told them that Hebert had called him to ask for a loan and the name of an attorney. He gave Hebert the name of an attorney but not a loan.

Manton had never been in Hebert's vehicle nor had he driven it to the bank to try and fraudulently cash a check. Manton gave a recorded statement, agreed to take a polygraph test and let them speak to his wife. The deputies brought Manton home, at which time Manton learned about the search. The deputies had seized personal items that belonged to his wife, religious artifacts, prayer books and diaries, none of which has ever been returned despite numerous requests.

The next morning, January 25, 2008, Sergeant O'Cull and Major Oswald returned and arrested Manton, knowing that the Jefferson Parish investigation had revealed nothing and knowing that Gerstner's identification was invalid. They placed Manton on probation hold, in an effort to extort and to coerce him to admit to doing something that he did not do.

Manton was then placed in a three-by-three foot holding cell called the "squirrel cage" and locked in there for four and a half days. He was harassed, deprived of the necessities of life (given one sandwich the entire time), deprived of sleep, had to urinate in a cup and was otherwise prohibited from using the restroom, not allowed to use the phone and deprived of his medication for his heart condition. He was then moved to Isolation Cell A50, where he remained for 93 days. It was extremely cold, and the emergency call button was broken.

In isolation, Manton was refused his blood pressure medication, he became extremely disoriented and began to hallucinate. The prisoner in A49 eventually called for help using his emergency button. The guards told prisoner Quadravant in A49 that Manton was "faking" and trying to beat a murder wrap. He was not fed the first four days in isolation, and one inmate shared

3

food with him. He was not allowed to shower or brush his teeth for 14 days nor was he given a blanket or a pillow. A spider bit him as well, and the bite went untreated for days. The complaint continues the description of the cruel and unusual punishment, including letting other prisoners know that Manton was a former cop, so that they would beat him, which they did.

Plaintiff voluntarily dismissed several parties and also settled with some. The District Court ultimately granted summary judgment in favor of defendants Manton and O'Cull and against plaintiff. Plaintiffs appealed the grant of the motion for summary judgment. The United States Court of Appeals for the Fifth Circuit recently dismissed the appeal for failure to prosecute. [Doc. #170].

## II.     The Parties' Contentions

### A.     Defendants

Plaintiff alleged thirteen causes of action against defendants Strain and O'Cull. Because the District Court granted their motion for summary judgment, defendants allege that they are prevailing parties under Rule 54(d)(1) and thus allowed to recover costs under 28 U.S.C. § 1920. Defendants also contend that they are prevailing parties under 42 U.S.C. § 1988 for the purpose of recovering attorneys' fees.

To recover attorneys' fees under Section 1988, defendants note that they must demonstrate that plaintiffs' claims were frivolous, unreasonable or groundless. To so determine, a court must consider whether the plaintiff established a prima facie case, whether the defendant offered to settle and whether the court dismissed the suit or held a full trial. Here, the District Court summarized plaintiffs' claim in five categories: (1) unreasonable search and seizure; (2) wrongful arrest: (3) cruel and unusual punishment; (4) conspiracy to violate constitutional rights; and (5) neglect to prevent

4

conspiracy. In response to their motion for summary judgment supported by several hundreds of pages of exhibits, defendants argue that plaintiffs submitted nothing but their own brief, self-serving affidavits and a report by a purported expert witness that the District Court held inadmissible under Federal Rule of Evidence 702.

Citing the District Court's opinion, defendants contend that plaintiffs offered no evidence or legal authority beyond conclusory allegations to support their claims. Defendants argue that the District Court's holding is support that plaintiffs failed to establish a prima facie case on any of their claims. Defendants also assert that they never offered to settle the suit. Lastly, defendants note that the District Court dismissed plaintiff's claims, and the suit never proceeded to trial. Accordingly, defendants contend, they are entitled to attorneys' fees and costs under Section 1988.

Defendants also argue that they are entitled to attorneys' fees under 28 U.S.C. § 1927 because evidence of bad faith, improper motive or reckless disregard to a duty owed to the Court exists here. Defendants assert that the utter lack of any factual basis to support plaintiffs' claims is evidence of bad faith on the part of plaintiffs' counsel, Daniel Abel. As support for this argument, defendants note that Abel repeatedly represented to the Court that he would submit the deposition testimony of JPSO detectives Dianne Perilloux and Terry Poche and of individuals A.J. Hand and Stephen Martin. Abel allegedly represented to the Court that such testimony would demonstrate that the JPSO deputies had decided not to prosecute plaintiff and that they should not have arrested plaintiff. Not only did Abel never submit such testimony, but defendants contend that the testimony directly contradicted plaintiffs' statements. Indeed, Abel never even deposed Poche.

Noting that plaintiffs' complaint consisted of 160 paragraphs and 58 pages, that more than 20 witnesses were deposed, resulting in more than 2,000 pages of sworn testimony, and that the suit

5

was less than two working days from trial, defendants argue that the attorneys' fees incurred were reasonable and necessary. Defendants note that their degree of success was complete: A complete dismissal of plaintiffs' complaint that sought more than $3.25 million in damages. Defendants argue that the rates, which range from $115.00 to $125.00/hour for attorneys and $50.00/hour for a paralegal, are reasonable.

Defendants seek a total of $177,944.07:

| | |
|---|---|
| Fees for service of summons and subpoenas | $1,052.06 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | $5,745.00 |
| Fees for witnesses | $903.00 |
| Fees for copies necessarily obtained for use in the case | $986.92 |
| Fees for expert witnesses | $4,550.00 |
| Attorneys' Fees | $164,707.09 |

### B.     Plaintiffs

Plaintiffs argue that their claims were not frivolous, vexatious and improper under Section 1988 and caused no needless litigation under Section 1927. Plaintiffs claim that the STPSO and O'Cull were responsible for Manton's arrest and false incarceration after Jefferson Parish had told the STPSO not to arrest Manton, as the parties learned through the deposition of Detective Perrilloux on the final day of extended discovery. After plaintiffs learned this, it was unnecessary to depose Poche. Plaintiffs listed Perrilloux as a shall-call witness and used her testimony in a Motion in Limine.

Plaintiffs allege that Manton was falsely arrested, spent 120 days in jail, lost his contracting business and his home and lost two children in separate accidents during this litigation. Plaintiffs allege that Manton was guilty of no crime. Plaintiffs note that even though Strain and O'Cull did not participate in the investigation of Manton, St. Tammany Parish – and not Jefferson Parish –

6

arrested him. The arrest was allegedly based on the false identification of Manton at Chase by teller Gerstner. Assistant Attorney General Stephen Martin dropped all charges against Manton after his first and only eight- to ten-minute meeting with Gerstner. Plaintiffs deposed Martin at the end of discovery and listed him as a shall-call witness.

Attorney (now Judge) A.J. Hand testified that Gerstner told him that the sheriff's deputies suggested who she should pick out in the photo line-up. Plaintiffs filed an affidavit into the record with this information and cited it in their opposition to defendants' motion for summary judgment. Dianne Hebert also testified that Manton never borrowed or had in his possession the truck in which he was identified. Her ex-husband Mark Hebert owned the truck. Hebert agreed to testify, and plaintiffs listed her as a shall-call witness. Plaintiffs argue that defendants' sole argument as to why they are entitled to fees is that plaintiffs failed to supplement their opposition to the motion for summary judgment with evidence. But plaintiffs note that they cited Hand's, Martin's and Perrilloux's testimony during motion practice.

Plaintiffs also contend that instead of protracting this litigation, they contracted it by voluntarily dismissing those parties against whom they did not have sufficient evidence to pursue the claims. Plaintiffs voluntarily dismissed the Louisiana Sheriff's Association ("LSA") (on motion of the LSA), the Parish of St. Tammany, Deputy Chief Al Strain, Deputy Chief Fred Oswald, Deputy Warden Gregory Longino and Deputy Warden Mike Core.

Plaintiffs argue that defendants are not entitled to attorneys' fees because the bills contain (1) no description of any legal work performed; (2) the date when any legal work was performed; (3) the person who performed such work; and (4) the necessity or degree of skill required for the work performed. Not one hour of the bill is itemized as to the work performed. Plaintiffs note that

attorney Charles Hughes himself billed almost 60 hours in the suit but never appeared at a deposition or a hearing, signed a motion or pleading or performed any other documented service in the record.

Plaintiffs contend that defense counsel has failed to meet its burden to demonstrate all hours actually expended on the case, the reduction of any duplicative or cumulative hours or how each hour was spent. Plaintiffs note that defendants have cited the Court with no evidence that they exercised billing judgment in reducing the hours expended. Plaintiffs argue that defendants have not provided the Court with any form of dated or hourly work to conduct the necessary lodestar analysis. Plaintiffs assert that defendants have not demonstrated how their failure to supplement their opposition caused defense counsel to perform any work not already performed. Plaintiffs also contend that defendants have not demonstrated any individual attorney's qualifications to allow the Court to determine whether the cited hourly rates are reasonable.

Lastly, plaintiffs ask the Court to order defense counsel to produce their records of all work performed on this case between January 2009 and October 2010.

### III. Law and Analysis

#### A. Section 1988

Section 1988 of Title 42 of the United States Code "allows the district court, in its discretion, to award a prevailing party reasonable attorney's fees." *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991). The statute provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988. "While plaintiffs prevailing under 42 U.S.C. § 1988 are entitled to attorneys' fees unless special circumstances would render an award unjust, prevailing defendants are entitled to attorney fees only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Mississippi*, 921 F.2d at 609.  A suit is frivolous only if it is "so lacking in arguable merit as to be groundless or without foundation." *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999). Attorney's fees for prevailing defendants are thus presumptively unavailable unless a showing is made that the underlying civil rights suit was "vexatious, frivolous, or otherwise without merit." *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001).

The mere dismissal of a plaintiff's case does not establish that the claim itself was unreasonable, frivolous, or groundless, and the burden of showing these underlying factors remains on the defendant. *Id.* at 512. When determining whether a plaintiff's civil rights action is frivolous, the court may consider the following factors:  (1) whether the plaintiff established a prima facie case;  (2) whether the defendant offered to settle; and (3) whether the court dismissed the case or held a full trial. *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000).  The dismissal of a plaintiff's claims before they reach the jury is insufficient by itself to support a finding of frivolity. *See id.* at 293.  Rather than relying on the outcome of a case, the court must inquire "'whether the case was so lacking in merit that it was groundless.'" *Hahn v. City of Kenner*, 1 F. Supp. 2d 614, 617 (E.D. La. 1998) (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).  If a plaintiff presents some credible evidence in support of the claim, then the case has merit, and an award under Section 1988 is inappropriate. *See id.*;  *see also Brown v. Borough of Chambersburg*, 903 F.2d 274, 276-77 & n. 1 (3d Cir. 1990) (noting that the standards for assessing attorney's fees are identical under Section 1988 and 42 U.S.C. § 2000e-5(k)). Courts disfavor

awarding fees to prevailing defendants because an average plaintiff in such actions only knows of his or her belief that the discrimination occurred and of the filing of the claim, and generally defers to counsel's advice. *Davis v. Braniff Airways, Inc.*, 468 F. Supp. 10, 13-14 (N.D. Tex. 1977).

### B. Section 1927

Title 28, United States Code, Section 1927 provides, in its entirety:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, *and attorneys' fees reasonably incurred because of such conduct*.

28 U.S.C. § 1927 (emphasis added). "Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous appeals and arguments waste scarce judicial resources and increase legal fees charged to the parties." *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995). The Supreme Court has observed that "§ 1927 does not distinguish between winners and losers or between plaintiffs and defendants." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). The statute is designed to curb litigation abuses by counsel, irrespective of the merits of the client's claims or defenses.

Nevertheless, courts should remain mindful that sanctions under 28 U.S.C. § 1927 are "punitive in nature" and should only be awarded if a party "multiplies the proceedings . . . unreasonably and vexatiously." *Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010) (citing *Religious Tech. Ctr. v. Liebreich*, 98 Fed. Appx. 979, 983 (5th Cir. 2004); *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994)) (noting that Section 1927 must be strictly construed so as "not to dampen the legitimate zeal of an attorney in representing his client"). This standard, which "focuses on the conduct of the litigation and not on the merits," requires "clear and convincing evidence 'that every facet of the litigation was patently

10

meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Id.* (quoting *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002)) (emphasis in original).

### C. Attorneys' Fees

While the Court finds that the question is a close, the Court ultimately finds that attorneys' fees are not warranted here for the reasons stated below. When the District Court granted Strain's and O'Cull's motion for summary judgment, it specifically noted:

> In his September 15, 2010 opposition to defendants' motion for summary judgment, Manton states that he plans to submit depositions of JPSO officers Poche and Perilloux, as well as depositions from August Hand and Stephen Martin. It is October 21, 2010, and trial is October 25, 2010. Manton has not submitted those depositions. The deadline for discovery passed on September 24, 2010. The Court will consider Manton's factual arguments only to the extent that they are based on evidence in the record and legitimate inferences from such evidence. The material Manton submitted in opposition to summary judgment consists of the affidavit of Manton's wife, Sherrie Manton, and an expert report compiled by Albert L. Cromp, which the Court found to be inadmissible under Rule 702 of the Federal Rules of Evidence. The Court also considers Manton's own affidavit, despite that he did not attach it to his opposition to defendants' motion for summary judgment. The Court finds that Manton has provided insufficient evidence to survive summary judgment on his federal causes of action.

[Doc. #148 at pp. 12-13]. As noted, the District Court ultimately found that Manton provided insufficient evidence to support his federal causes of action because he submitted only the self-serving affidavits of himself and his wife in support of his opposition to the motion for summary judgment.

Here, however, plaintiffs have submitted more evidence to support their argument that they had some potential evidence in support of their claims. Attached to the opposition to defendants' motion for attorneys' fees is the deposition of Margaret Diane Perilloux. [Doc. #160-2]. Perilloux testified that the JPSO's arrest surprised both she and Liutenant Poche because they had assured

11

Manton that he would not yet be arrested. [*Id.* at p. 22-23]. While she testified that they had not told Manton that he would never be arrested, she stated that at that time, she had an agreement with the STPSO that Manton would not be arrested because he was cooperating fully in the investigation. [*Id.* at pp. 23-25].

In addition, Manton has submitted to the Court the Affidavit of August J. Hand, a lawyer who represented Manton at an earlier stage of this litigation and who is now a member of the Louisiana judiciary. [Doc. #160-4].[1] Hand stated that he spoke with Gerstner, who represented to him "that the officer was very suggestive as to who she should pick" in the line-up. [Doc. #113 at ¶ 12]. Hand also stated that "Ms. Gerstner said she did know who the person was, but the police pretty strongly suggested that she pick the person who was in fact Norman Manton." [*Id.* at ¶ 13]. Hand also testified that "[i]mmediately after Ms. Gerstner revealed that the police had told her who to select from the photo line-up, the State of Louisiana dismissed all the charges against Manton." [*Id.* at ¶ 16].

Given this testimony and that of Perilloux, the Court can not find that Manton's claims were "so lacking in arguable merit as to be groundless or without foundation." *Walker*, 168 F.3d at 240. Indeed, given that plaintiffs have advanced at least some support for their allegations in the complaint, an award under Section 1988 is inappropriate. *Hahn*, 1 F. Supp. 2d at 617. The Court finds that the evidence that plaintiffs have presented to it with their opposition memorandum may have, for example, supported Manton's claim for wrongful arrest. While the Court notes that

---

[1] While the Court notes that the affidavit submitted with plaintiff's opposition here is not notarized, plaintiffs earlier submitted a properly-executed affidavit in connection with their opposition to Chase's motion for summary judgment. [Doc. #113-2]. The Court wonders why counsel for plaintiff failed to attach this affidavit to their opposition to the motion for summary judgment filed by Strain and O'Cull.

plaintiffs have not submitted support for many of their allegations, the Court finds that plaintiffs have now at least provided some support for their claims here. Accordingly, the Court denies any request for attorneys' fees under Section 1988.

In addition, the Court finds no evidence here of bad faith, improper motive, or reckless disregard of the duty owed to the court. That counsel dismissed defendants when he determined that he could not support the allegations against them alone weighs in favor of not awarding attorneys' fees under Section 1927. Counsel for defendants Strain and O'Cull also represented defendants Al Strain, Oswald, Longino and Core. The dismissal by plaintiffs of these four defendants meant that defense counsel need no longer expend valuable time and energy in defending the claims against them and could concentrate their resources on the two remaining defendants. Considering that sanctions under Section 1927 are "punitive in nature," this Court can not find that counsel for plaintiffs multiplied the proceedings unreasonably and vexatiously. The new evidence above demonstrates that defendant can not demonstrate by clear and convincing evidence that every facet of the litigation was patently meritless. Accordingly, the Court denies attorneys' fees under Section 1927.

**IV.  28 U.S.C. § 1920 and Rule 54**

Prevailing parties may move for an award of costs under Federal Rule of Civil Procedure 54(d)(1), which provides that "costs . . . shall be allowed of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). A district court should grant an award for costs to the prevailing party under Rule 54(d)(1) as long as a listed expense is reasonably necessary to the litigation and authorized by statute. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). The rule creates a presumption that a prevailing party is entitled to an award of costs. *See id.*

Accordingly, the unsuccessful party must show circumstances sufficient to overcome this presumption. *See* Fed. R. Civ. P. 54(d)(1).

Despite this presumption in favor of the prevailing party, the district court has broad discretion to determine what costs are properly recoverable. *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). The Supreme Court, however, has limited this discretion, requiring that only those costs articulated in Section 1920 are recoverable under Rule 54(d) absent explicit statutory or contractual authorization to the contrary. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).

A court may tax as costs the following fees: "fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees under [28 U.S.C. § 1923]; compensation of court-appointed experts, interpreters, and special interpretation services." 28 U.S.C. § 1920(1)-(6). The fee for serving a summons by private process server, however, is generally not recoverable. *U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153 (2d Cir.1996) (denying costs of private process server). Similarly, costs of expedited transcripts are typically not recoverable unless "the special character of the litigation necessitates expedited receipt of the transcript." *Fogelman*, 920 F.2d at 285.

For a prevailing party to recover "fees of the court reporter" and "fees for exemplification and copies of papers necessarily obtained," those fees must be for "use in the case." 28 U.S.C. § 1920. The Fifth Circuit has interpreted this phrase broadly; there is no requirement that the prevailing party use the material, such as a deposition, in a successful summary judgment motion

14

in order to obtain costs associated with that material under Rule 54(d). *See, e.g., Stearns Airport Equipment Co. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999). "As long as there is a reasonable expectation that the deposition may be used for trial preparation, it may be included in costs." *Id.* On the other hand, costs associated with materials used primarily for discovery or investigative purposes are not recoverable, as they are not obtained for "use in the case." *Id.*

Defendants seek $5,745.00 in costs for printed or electronically recorded transcripts necessarily obtained for use in the case and $986.92 for copies of any materials where the copies are necessarily obtained for use in the case. But defendants have failed to meet their burden to demonstrate that these items were "necessarily obtained for use in the case." The Court has no information before it to conduct the proper analysis to determine whether the materials were obtained for use in the case. For example, defendants could have demonstrated that the recorded transcripts were of the depositions of individuals who were listed as witnesses for the parties. *See McGehee v. State Farm Gen. Ins. Co.*, Civ. A. No. 08-3851, *1 (E.D. La. Aug. 18, 2010). A self-serving affidavit in which the attorney states that the items were obtained for use in the case is insufficient, in and of itself, to meet defendants' burden. The Court thus rejects these two requests for costs.

Defendants also seek $1,052.06 in fees for service of summons and subpoenas. As noted above, however, the fee for serving a summons by private process server, however, is generally not recoverable. *U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153 (2d Cir.1996). This Court has no information before it of whether the Court issued these summons and subpoenas or whether a private process server served them. Accordingly, the Court denies this request for costs.

Defendants also seek $4,550.00 in fees for expert witnesses. But only fees for "court-appointed" expert witnesses are recoverable under Section 1920. Moreover, defendant failed to submit any bills or statements on behalf of the expert witnesses so the Court can properly determine whether the $4,550.00 is even a valid amount.

Lastly, defendants seek $903.00 in fees for witnesses. Attached to defendants' motion is a United States District Court Witness Fees statement in which defendants detail the $903.00 incurred by the witnesses. Accordingly, the Court will allow recovery of the $903.00 for witness fees.

**V.    Conclusion**

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendants' Motion to Tax Costs and Attorneys' Fees Pursuant to Rule 54(d)(1) & (2) of Federal Rules of Civil Procedure and 28 U.S.C. § 1927 [Doc. #152] be GRANTED IN PART as outlined above.

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 28th day of February, 2011.

**DANIEL E. KNOWLES, III**

**UNITED STATES MAGISTRATE JUDGE**